IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| PATRICIA L. SCARBOROUGH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 07-0165-CV-W-ODS |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER AND OPINION AFFIRMING COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff's request for review of the final decision of the Commissioner of Social Security denying her applications for disability and Supplemental Security Income benefits. The Commissioner's decision is affirmed.

## I. BACKGROUND

Plaintiff was born in August 1949 and graduated from high school. She has prior work experience as a sewing machine operator and a chicken deboner. She filed applications for benefits under Title II and Title XVI of the Social Security Act on April 23, 2002, alleging she became disabled on July 31, 2003, due to a combination of arthritis, carpal tunnel syndrome, and depression.

On July 11, 2003, Plaintiff saw Dr. Shari Thompson with complaints of back pain. A CT scan showed degenerative joint disease, and Dr. Thompson recommended Plaintiff see an orthopedist. Plaintiff was prescribed effexor and amitriptyline (antidepressants) and arthrotec (an anti-inflammatory). R. at 120. On August 24, 2004, Plaintiff complained of pain running from her back to her heels and obtained "refills" of her medication even though the gap between visits – July 2003 to August 2004 – is not explained. (It may be that documentation of visits on other occasions was not submitted for inclusion in the Record).

Plaintiff continued to see Dr. Thompson intermittently for ordinary ailments (e.g., the flu), but Plaintiff's back pain is not mentioned again until July 5, 2005. Plaintiff reported she slipped on the wet floor in her basement and had recurring bouts of dizziness, headaches and nausea as well as pain in her back and legs. Dr. Thompson determined Plaintiff suffered a concussion as a result of the fall. R. at 133-34. On August 1, Plaintiff still complained of pain in her hip and could not bear weight on her left leg. Dr. Thompson determined Plaintiff suffered from a strained hamstring and advised Plaintiff to apply ice, use crutches, and minimize her movement. She also prescribed vicodin. R. at 131-32. Improvement was noted within a week, R. at 129-30, and on August 12 Plaintiff was no longer limping or using crutches. R. at 128. However, on September 7, Plaintiff reported pain in her knee whenever she flexed it or used it to bear her weight. She was diagnosed with a muscle strain; x-rays were ordered and Plaintiff was prescribed vicodin and ibuprofen. R. at 127. Two days later, Plaintiff returned and reported continued pain, although hot baths and the use of an ace bandage helped reduce the pain. Testing revealed reduced strength and range of motion in Plaintiff's left knee, and observation revealed swelling. The diagnosis was knee strain and arthritis. Plaintiff was referred to Dr. Edwards. R. at 126. This is the last record of a visit to Dr. Thompson, and there are no records from Dr. Edwards.

In September 2004 Plaintiff was evaluated by Dr. Frank Eddleman at DDS' request. He did not have x-ray or other imaging data to confirm the presence of degenerative disk disease, and he noted the only available medical records (from Dr. Thompson) did not substantiate the presence of degenerative disease or changes. His examination revealed tenderness in her lumbar spine unaccompanied by muscle atrophy or weakness. Plaintiff's spine "showed good alignment and minimal scoliosis with mild kyphosis." Dr. Eddleman also noted "no grossly abnormal findings for a 55 year old female." Plaintiff's left hand – which had undergone nerve release surgery many years before – demonstrated a grip strength of 5/5. R. 122-23.

In January 2004, Plaintiff's counsel arranged for a consultative exam by Dr. Robert Frick. Apparently, he diagnosed Plaintiff as suffering from major depression and

2

assessed her GAF score as between 40 and 45.  However, while the ALJ described Dr. Frick's findings, R. at 16, 184, the actual report is not included in the Record.  R. at 185.

During the hearing, Plaintiff identified Dr. Thompson as her treating physician.  R. at 167.  She testified her right hand needs carpal tunnel surgery but has not had it yet, so she has difficulty with that hand.  (Plaintiff is right-hand dominant).  Surgery in her left hand alleviated a lot of the problems but she still experiences pain at times.  R. at 168.  She does minimal housework and watches television, can sit for only fifteen minutes before she needs to get up and cannot walk very far.  R. at 169-71.  Plaintiff testified a doctor has imposed lifting restriction of five pounds, but could not recall which doctor (although she was certain it was not Dr. Thompson).  R. at 171-72.  The vicodin and amitriptyline make her so drowsy and groggy that she could not do simple jobs.  R. at 175-76.  Plaintiff also testified she was depressed because of the pain she experiences and has contemplated suicide.  R. at 177.  She has drying spells daily that last twenty to thirty minutes, but has never reported these to Dr. Thompson (even though Dr. Thompson has continued to prescribe Plaintiff's anti-depressants).  R. at 178.  Upon further questioning, Plaintiff testified she had crying spells even when she was working.  R. at 179.

A Vocational Expert ("VE") testified Plaintiff's prior jobs are categorized as light work, but both required full function in both of Plaintiff's hands.  R. at 183-84.  A lifting restriction of five pounds would further limit Plaintiff to performing only sedentary work.  R. at 184.  Finally, a GAF score of 40-45 would reflect limitations on her ability to work.  R. at 184-85.

The ALJ found Plaintiff suffered from degenerative arthritis of the lumbar spine, but no other severe impairments.  With respect to Plaintiff's depression, the ALJ noted Plaintiff has not received or sought psychiatric treatment and did tell her treating doctor she was experiencing crying spells and suicidal thoughts.  Moreover, nothing in the medical records supported the existence of a severe mental condition.  R. at 16.  As for Plaintiff's carpal tunnel syndrome, the ALJ observed Plaintiff had nerve release surgery on her left hand and no medical records addressed the need for surgery on her right.  In

3

fact, the medical records do not reflect any serious complaints by Plaintiff.  Finally, Dr. Eddleman's testing revealed normal grip strength in both hands.  R. at 16.

The ALJ also concluded Plaintiff's "medically determinable impairment could reasonably be expected to produce the alleged symptoms, but . . . the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible."  R. at 18.  In reaching this conclusion, the ALJ noted the absence of indication by any doctor that Plaintiff was limited in the manner she described, her failure to report serious limitations to her doctor, the lack of evidence (e.g., radiological results) supporting the seriousness of condition she described, and the clinical findings that contradicted her testimony.  R. at 18.  The ALJ ultimately concluded was limited only in that she could lift and carry no more than 10-20 pounds, could not climb or perform work at heights, and needed to avoid vibrations.  R. at 16.  Based on these findings, Plaintiff retained the residual functional capacity to return to her past work as a sewing machine operator.  R. at 19.

## II.  DISCUSSION

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole.  Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion.  [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion."  Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted).  Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision.  Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)).  Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion.  Smith v. Schweiker, 728 F.2d 1158, 1161-62 (8th Cir. 1984).

4

## A. Plaintiff's Credibility

Plaintiff presents this argument second, but it is addressed first here because an ALJ's credibility determination precedes his determination about the claimant's ability to return to her past relevant work. The critical issue is not whether Plaintiff experiences pain, but rather the degree of pain that she experiences. House v. Shalala, 34 F.3d 691, 694 (8th Cir.1994). The familiar standard for analyzing a claimant's subjective complaints of pain is set forth in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984) (subsequent history omitted):

> While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced. The adjudicator may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them.
>
> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
> 1. The claimant's daily activities;
> 2. the duration, frequency and intensity of the pain
> 3. precipitating and aggravating factors;
> 4. dosage, effectiveness and side effects of medication;
> 5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's subjective complaints solely on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

5

739 F.2d at 1322.

Plaintiff's subjective complaints of pain cannot be discounted or ignored simply because they are not fully corroborated by objective medical evidence, but the lack of such corroboration remains a factor. Here, there is more than just a lack of corroboration: Plaintiff's testimony is contradicted by some of the clinical findings. Lack of strong pain medication is inconsistent with subjective complaints of disabling pain. See Richmond v. Shalala, 23 F.3d 1441, 1443-44 (8th Cir. 1994). Finally, the ALJ was entitled to consider the inconsistencies between Plaintiff's statements to her doctor and Plaintiff's testimony.

Plaintiff's primary contention is the ALJ failed to consider her work record. The ALJ was not obligated to automatically believe Plaintiff's testimony just because she had a good work record. The factors identified and relied upon by the ALJ provide substantial support for his conclusions regarding the extent of Plaintiff's limitations.

### B. Ability to Perform Past Work

Plaintiff contends the ALJ erred in failing to make specific findings about the physical and mental requirements/demands of the position of sewing machine operator. It is true the ALJ did not make findings on this regard, nor did he discharge this duty (as he is permitted to do) by relying on the Dictionary of Occupational Titles. See Pfitzner v. Apfel, 169 F.3d 566, 569 (8th Cir. 1999). However, relying on the Dictionary of Occupational Titles is only one method for satisfying this requirement; the ALJ can also rely upon testimony from VE. E.g., 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2) (both providing the Commissioner may rely upon testimony from vocational experts); Travis v. Astrue, 477 F.3d 1037, 1043 (8th Cir. 2007) (affirming denial of benefits where ALJ relied on vocational expert's testimony regarding physical and mental demands of claimant's past relevant work); Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003) (same). Thus, the ALJ could rely upon the VE's testimony when he compared Plaintiff's residual functional capacity to the physical and mental demands associated with a job as a sewing machine operator. R. at 19. In this regard, it is worth noting the ALJ found

6

no limitations on Plaintiff's ability to sit or stand, and the most significant limitation found by the ALJ – a restriction to lifting ten pounds frequently and twenty pounds occasionally – is consistent with a finding of an ability to perform light work. 20 C.F.R. §§ 404.1567(b), 416.967(b).

### III. CONCLUSION

The Court concludes there is substantial evidence in the record as a whole to support the Commissioner's decision, and his final decision denying benefits is affirmed.

IT IS SO ORDERED.

                                            /s/ Ortrie D. Smith
                                            ORTRIE D. SMITH, JUDGE
DATE: September 28, 2007             UNITED STATES DISTRICT COURT